USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/5/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHANEL, INC.,

                     Plaintiff,

-against-

XIAOLE LIN, SHUN MIAO DING, GUO L. HUANG, XIAOWEI GAO, XINGYUN HU, MING LI, FEI Y. LU, YONGCHAN ZHANG, YU HOU QU, CAI QIN XIE, XIAOLIU WANG, and JOHN and JANE DOES 1–100,

                     Defendants.

Civil Case No. 1:23-cv-02004-JHR

**[PROPOSED] PRELIMINARY INJUNCTION ORDER**

**WHEREAS**, on March 10, 2023, Plaintiff Chanel, Inc. ("Plaintiff" or "Chanel") commenced this action and sought the entry of (1) an *ex parte* temporary restraining order pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65(b), (2) an order granting leave for Chanel to take expedited discovery pursuant to Fed. R. Civ. P. 26(d), and (3) an order to show cause why a preliminary injunction should not issue pursuant to 15 U.S.C. § 1116, 15 U.S.C. § 1125(c)(1), N.Y. Gen. Bus. Law § 360-l, and Fed. R. Civ. P. 65(a) ("Motion for Preliminary Injunction," and, collectively, the "Application");

**WHEREAS**, on March 17, 2023, the Court held a hearing on the Plaintiff's Application;

**WHEREAS**, on March 20, 2023, the Court granted Chanel's Application and entered an *Ex Parte* Temporary Restraining Order ("TRO"), Order Authorizing Expedited Discovery, and Order to Show Cause for a Preliminary Injunction ordering Defendants to appear before the Court and show cause on April 3, 2023 why a preliminary injunction should not be issued pursuant to 15 U.S.C. § 1116, 15 U.S.C. § 1125(c)(1), N.Y. Gen. Bus. Law § 360-l, and Fed. R. Civ. P. 65(a);

**WHEREAS**, on March 22, 2023, Chanel posted a undertaking in the amount of $5,000 with the Clerk of Court to provide security for the payment of such costs and damages as may be incurred or suffered by any party as a result of a wrongful implementation of the TRO, or any part thereof;

**WHEREAS,** Chanel timely served the Summons, Complaint, TRO, and all supporting papers on all Defendants and filed proof of service with the Court;

**WHEREAS**, Defendants did not file any papers opposing Chanel's Application or Motion for Preliminary Injunction and did not appear at the order to show cause hearing on April 3, 2023;

**WHEREAS**, the Court, having considered Chanel's Motion for a Preliminary Injunction, makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. Chanel is the owner of several valid and subsisting trademark registrations, including, but not limited to, the federally registered marks CHANEL, the CC Monogram, and design marks and variations thereof owned by Chanel (collectively, the "Marks"), which appear on the Principal Register in the United States Patent and Trademark Office ("USPTO"), including:

| Reg. No. | Trademark | Goods |
|---|---|---|
| 0626035 | CHANEL | Class 18: Women's handbags |
| 1347677 | CHANEL | Class 18: Leather goods namely, handbags |
| 1733051 | CHANEL | Class 18: Leather goods namely, handbags, wallets, travel bags, luggage, business and credit card cases, change purses, tote bags, cosmetic bags sold empty, and garment bags for travel |
| 1314511 | (CC Monogram design) | Class 18: Leather goods namely, handbags |

| 1734822 | | Class 18: Leather goods namely, handbags, wallets, travel bags, luggage, business card cases, change purses, tote bags, and cosmetic bags sold empty |
|---|---|---|
| 5912273 | | Class 18: Handbags |

ECF No. 8 (Declaration of Lora Moffatt, dated March 7, 2023 ("Moffatt Decl.")) ¶¶ 6–7, Ex. A.

2.      For many decades, Chanel has extensively and continuously advertised and promoted the Marks in connection with, *inter alia*, handbags, small leather goods, shoes, clothing, jewelry, eyewear, accessories, and fragrance and beauty products within the United States. *Id.* ¶¶ 5, 8–11.

3.      As a result, the Marks are well-known throughout the United States and worldwide as products of high quality exclusively originating from Chanel. *Id.* ¶ 12.

4.      Based on the widespread and long-term use of the Marks, the Marks became famous long prior to the acts of Defendants described below and have developed a strong secondary meaning and significance in the minds of the purchasing public. *Id.* ¶¶ 13, 20.

5.      Chanel also owns common law rights in the Marks and in its trade name, Chanel, under which it has long promoted, advertised, offered for sale, and sold its goods in the United States, including in New York. *Id.* ¶ 14.

6.      Over a period of many months in 2022 and 2023, investigators uncovered counterfeiting operations conducted in the Chinatown neighborhood of Manhattan, whereby a network of individuals distribute, offer to sell and sell knockoff products bearing spurious marks owned by various luxury goods companies, including Chanel. ECF No. 9 (Declaration of Stephen G. Ward, dated March 7, 2023 ("Ward Decl.")) ¶¶ 4–5.

7. Those involved in the counterfeit operations use laminated or digital sell sheets to offer knockoffs of high-end handbags and other luxury products to passersby in the Chinatown neighborhood of Manhattan, often utilizing runners to obtain counterfeit goods from stashes in nearby vehicles once prospective customers express interest in making a purchase. *Id.* ¶ 6.

8. Pursuant to a seizure order entered in a related action captioned *Christian Dior Couture SA v. Xiaole Lin et al.*, Case No. 22-cv-10716 (the "Dior Action"), on January 12, 2023, attorneys for Christian Dior, who also represent Chanel in this action, in conjunction with investigators and the New York City Police Department, executed a seizure in the Chinatown neighborhood of Manhattan on numerous Defendants and vehicles bearing New York license plate numbers DSY 8799, DGD 2539, JGA 2395, and KNK 8606 (the "January 12 Seizure"). *Id.* ¶ 7.

9. The January 12 Seizure uncovered thousands of counterfeit items including, *inter alia*, 185 knockoff bags and numerous laminated sell sheets bearing the Chanel Marks. *Id.* ¶ 8.

10. Defendants Huang, Hu, Lu, Wang, Qu, Zhang, and Xie were all present at the January 12 Seizure and each are believed to be involved in the trafficking, offering for sale, and/or sale of counterfeit products bearing the Marks. *Id.* ¶ 9.

11. Defendants Lin, Ding, Gao, and Li are also believed to be involved in the counterfeiting operations based on prior investigations. *Id.* ¶ 10–14.

12. Chanel has examined samples of the products that were discovered during the January 12 Seizure and photographs thereof and determined them to be counterfeit. Moffatt Decl. ¶¶ 21–23, Ex. C.

13. Chanel did not manufacture the counterfeit Chanel products, did not approve such products for sale and/or distribution, and has not authorized Defendants to use the Marks. *Id.* ¶¶ 21–24, 26.

14. Because the counterfeit products are not subject to Chanel's strict quality control standards and are manufactured, distributed, and sold without Chanel's authorization, any further offers for sale, distribution, and/or sales of such products will irreparably harm Chanel, its reputation, and its substantial goodwill in the Marks. *Id.* ¶¶ 26–28.

15. Chanel has no adequate remedy at law for Defendants' counterfeiting and infringing acts. *Id.* ¶¶ 26–29.

16. Monetary damages alone cannot adequately compensate Chanel for Defendants' infringements of Chanel's intellectual property rights because such damages fail to address the loss of control and damage to Chanel's reputation and goodwill. *Id.* ¶ 29.

17. A party seeking to obtain a preliminary injunction must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of an injunction; (3) that the balance of hardships favors the plaintiff; and (4) that the public interest will not be disserved if an injunction issues. *3M Co v. Performance Supply, LLC*, 458 F. Supp. 3d 181, 191 (S.D.N.Y. 2020).

18. The Court finds that Chanel is likely to succeed on the merits of its trademark counterfeiting and trademark infringement claims as well as its claims for false designation of origin and unfair competition under the Lanham Act. The Lanham Act provides that a defendant is liable for trademark infringement and counterfeiting if a defendant, "without the consent of the registrant, uses in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods . . . which such use[s] is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). Courts examine whether (1) "plaintiff's mark is entitled to protection," and (2) whether "defendant's use of the mark is likely to cause consumers confusion." *Virgin Enters. Ltd. v.*

*Nawab*, 335 F.3d 141, 146 (2d Cir. 2003). Chanel's claims for false designation of origin and unfair competition under the Lanham Act are subject to the same analysis and may be considered together. *See Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 114 (2d Cir. 2006).

19. Chanel meets both requirements. Chanel owns federal trademark registrations for the Marks, which serve as *prima facie* evidence of validity. *See* Moffatt Decl. ¶¶ 6–7, Ex. A; 15 U.S.C. §§ 1057(b), 1115(a); *see also Matal v. Tam*, 137 S. Ct. 1744, 1753 (2017). And because Defendants are using identical or substantially indistinguishable copies of Chanel's Marks in connection with their trafficking of counterfeit products, *see* Moffatt Decl. ¶¶ 6, 15, 21–24, Exs. A–C, Ward Decl. ¶ 8, likelihood of confusion is all but certain. *See Spin Master Ltd. v. Alan Yuan's Store*, 325 F. Supp. 3d 413, 421 (S.D.N.Y. 2018).

20. Demonstration of a likelihood of success on the merits of a Lanham Act claim demonstrates a likelihood of success on the merits of an unfair competition claim based on New York common law if the plaintiff shows the defendants acted in bad faith. *Salvatore Ferragamo S.p.A. v. Does 1-56*, No. 18-CV-12069 (JPO), 2020 WL 774237, at *4 (S.D.N.Y. Feb. 18, 2020). Because Chanel has demonstrated a likelihood of success on its trademark infringement and counterfeiting claims against Defendants, bad faith is presumed. *See id.*

21. Chanel has also demonstrated a likelihood of success on the merits on its dilution claims under both federal and New York trademark law. Federal trademark dilution claims require showing that "(1) the mark is famous; (2) defendant's use of the mark is made in commerce; (3) the defendant used the mark after the mark is famous; and (4) the defendant's use of the mark is likely to dilute the quality of the mark by blurring or tarnishment." *DigitALB, Sh.a v. Setplex, LLC*, 284 F. Supp. 3d 547, 557 (S.D.N.Y. 2018) (internal citation omitted). The legal standard for

New York trademark dilution claims is "essentially the same." *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 220 F. Supp. 2d 289, 297 (S.D.N.Y. 2002).

22.  Chanel satisfies each prong of the dilution analysis. Chanel's long-term, widespread advertising and sales success of products bearing the Marks over many decades, and the broad recognition of the Marks among the public over that time, demonstrate that the Marks are famous and became so long prior to the acts complained of herein by Defendants. *See* Moffatt Decl. ¶¶ 8–15, 20. Further, Defendants are trafficking the counterfeit Chanel products in commerce and such acts took place after the Marks became famous. *See id.* ¶¶ 20–24, 26, Ex. C; Ward Decl. ¶¶ 8–14. Indeed, it is the fame of Chanel's Marks that no doubt motivated Defendants to traffic in counterfeit Chanel products. And lastly, Defendants' use of Chanel's Marks is likely to cause dilution by blurring or dilution by tarnishment as courts in this District have held that the trafficking of counterfeit products causes dilution *per se*. *See, e.g.*, *Conopco, Inc. v. 2026 Third Realty, LLC*, No. 22 CIV. 3480 (AT), 2022 WL 1567795, at *4 (S.D.N.Y. May 13, 2022); *Burberry Ltd. v. Euro Moda, Inc.*, No. 08 CIV. 5781 (CM), 2009 WL 1675080, at *14–15 (S.D.N.Y. June 10, 2009). The use of counterfeit marks necessarily harms a mark's ability to serve as a unique source identifier causing dilution by blurring, and moreover it harms the reputation of a mark given the dissimilar quality of counterfeit products sold under the plaintiff's mark thereby causing dilution by tarnishment. *See Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 507 (2d Cir. 1996); *Burberry*, 2009 WL 1675080, at *15.

23.  Because Chanel has demonstrated a likelihood of success on the merits of its claims, irreparable injury may be presumed. 15 U.S.C. § 1116(a).

24.  On balance, the equities decidedly tip in favor of Chanel. Without an injunction, Chanel's goodwill among its customers and the public will suffer, consumers in the marketplace

will be confused, and Defendants will continue to profit from their exploitation of Chanel's intellectual property. *See* Moffatt Decl. ¶¶ 26–30. Defendants' retention of unlawful profits is insufficient to tip the balance in Defendants' favor. Defendants proceeded at their own peril when they intentionally infringed Chanel's intellectual property rights and engaged in this illicit conduct. *See Barefoot Contessa Pantry, LLC v. Aqua Star (USA) Co.*, No. 15-CV-1092 JMF, 2015 WL 845711, at *8 (S.D.N.Y. Feb. 26, 2015).

25.     Granting a preliminary injunction serves the public interest in this case because it will prevent the public from confusion, deception, and mistake as a result of Defendants' aforementioned acts. *See NYP Holdings v. New York Post Pub. Inc.*, 63 F. Supp. 3d 328, 342 (S.D.N.Y. 2014) ("The consuming public has a protectable interest in being free from confusion, deception and mistake.").

26.     Additionally, it is well-settled that district courts have inherent equitable authority to issue pre-judgment asset freeze injunctions in trademark infringement actions where a plaintiff seeks to recover defendant's profits. *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 130 (2d Cir. 2014). Since Chanel seeks the equitable remedy of an accounting of profits in addition to other equitable relief and damages (ECF No. 1 at 21–22), the Court has the inherent equitable authority to issue an asset freeze injunction.

27.     Courts have "wide discretion" on whether to require the posting of a security upon issuance of a temporary restraining order or preliminary injunction, and the amount thereof. *See Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996); Fed. R. Civ. P. 65(c). In light of the strong evidence of counterfeiting, infringement, unfair competition, and dilution, the Court finds that a bond of $5,000, which has already been posted by Chanel, remains appropriate in this instance. *See, e.g.*, *Conopco*, 2022 WL 1567795, at *11 ($5,000 bond).

## PRELIMINARY INJUNCTION ORDER

**IT IS HEREBY ORDERED THAT**, based upon the foregoing and for the reasons recorded on the record during the proceedings herein, issuance of a Preliminary Injunction is warranted under 15 U.S.C. § 1116, 15 U.S.C. § 1125(c)(1), N.Y. Gen. Bus. Law § 360-l, and Fed. R. Civ. P. 65(a), and Defendants Xiaole Lin, Shun Miao Ding, Guo L. Huang, Xiaowei Gao, Xingyun Hu, Ming Li, Fei Y. Lu, Yongchan Zhang, Yu Hou Qu, Cai Qin Xie, Xiaoliu Wang, their agents, servants, employees, officers, and all other persons and entities in active concert or participation with them, pending the final hearing and determination of this action, are hereby immediately **PRELIMINARILY ENJOINED** from:

1. Using any of the Marks or any other Chanel trademarks, names, or designations in connection with the trafficking, manufacture, importation, exportation, advertising, marketing, promotion, distributing, offering for sale, and/or sales of any products.

2. Committing any acts calculated to cause the public to believe that any Chanel-branded products are sold under the control or supervision of Chanel, when they are not;

3. Selling, passing off, inducing, or enabling others to sell or pass off any products as Chanel products or as produced by or for Chanel, which are not genuine Chanel products, or are not sold under the control or supervision of Chanel;

4. Trafficking, manufacturing, importing, exporting, distributing, advertising, marketing, promoting, offering for sale, and/or selling counterfeit products, or any labels, stickers, tags, signs, prints, wrappers, packaging, literature, and all other materials bearing the Marks or any other Chanel trademarks, and all plates, molds, or other means for making the same, directly or indirectly;

      5.      Infringing any Marks or any other Chanel trademarks or trade names, or copying any product design, packaging, label, or other material utilized by Chanel in connection with the distribution, offer for sale, and/or sale of any product or service without prior authorization from Chanel;

      6.      Using any counterfeit, copy, reproduction, or colorable imitation of any of the Marks or any other Chanel trademarks or trade name in connection with the promotion, advertising, offer for sale, or sale of any products;

      7.      Making or using in connection with the sale of any goods, a false description or representation including words or other symbols that falsely describe or represent, expressly or impliedly, such goods as Chanel goods and from offering such goods in commerce;

      8.      Diluting any of the Marks or any other Chanel trademarks;

      9.      Destroying and/or failing to preserve any counterfeit products or records related to the trafficking, manufacturing, importing, exporting, distributing, advertising, marketing, promoting, offering for sale, and/or sale of any products purporting to be Chanel products or other products using any of the Marks and/or any other Chanel trademarks; and

      10.      Aiding or abetting any other person or entity engaging in or performing any of the acts referred to in paragraphs 1 through 9 above.

**IT IS FURTHER ORDERED THAT**, during the pendency of this Order, Chanel shall be authorized to inspect any products trafficked, manufactured, imported, exported, distributed, advertised, marketed, promoted, offered, or sold by Defendants that bear the Marks for the purpose of determining whether they are genuine or counterfeit or infringing, and thus to confirm whether Defendants are complying with this Order.

**IT IS FURTHER ORDERED THAT**, within thirty days after service of this Order on Defendants by Chanel, Defendants shall file with the Court and serve on counsel for Chanel a report in writing under oath setting forth in detail the manner and form in which the Defendant has complied with this Order.

**IT IS FURTHER ORDERED THAT,** in accordance with Rule 65 of the Federal Rules of Civil Procedure, 15 U.S.C. § 1116(a), 1117(a), and this Court's inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief, Defendants, their officers, directors, owners, agents, employees, representatives, successors or assigns, and all persons acting in active concert or in participation with any of them, or receiving actual notice of this Order by personal service or otherwise, are preliminarily enjoined from transferring, withdrawing, or disposing of any money or other asset into or out of accounts held by, associated with, or utilized by the Defendants until further ordered by this Court.

**IT IS FURTHER ORDERED THAT,** any banks, savings and loans associations, payment processors or other financial institutions for the Defendants, receiving actual notice of this Order by personal service or otherwise, shall immediately locate all accounts held by or connected with Defendants, and any such accounts shall be preliminarily enjoined from transferring or disposing of any assets in those accounts until further ordered by this Court.

**IT IS FURTHER ORDERED THAT**, upon two (2) business days' written notice to the Court and Chanel's counsel, any Defendant or affected third party may, upon proper showing, appear and move for dissolution or modification of the provisions of this Order.

**IT IS FURTHER ORDERED THAT**, pending the final disposition of all claims in this action, Defendants shall preserve all documents, electronically stored information, and/or tangible things that may be relevant to the subject matter of, or reasonably calculated to lead to the

discovery of admissible evidence in, this action or any of the claims asserted herein, and maintain them in an accessible form and place.

## BOND

**IT IS FURTHER ORDERED THAT** the bond or undertaking in the amount of $5,000 posted with the Clerk of Court by Chanel on March 22, 2023 remains sufficient to provide security for the payment of such costs and damages as may be incurred or suffered by any Defendant, if any, as a result of wrongful implementation of this Order, or any part thereof.

**SO ORDERED**, this day of April 5 , 2023.

_____
Hon. Jennifer H. Rearden